UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GS HOLISTIC, LLC,

        Plaintiff,

v.                               Case No. 8:22-cv-02113-VMC-AEP

PURPLE HAZE OF SEMINOLE, LLC
d/b/a PURPLE HAZE TOBACCO &
ACCESSORIES and EVELIO
CALZADILLA,

        Defendants.

_____/

## **REPORT AND RECOMMENDATION**

Plaintiff GS Holistic, LLC, ("GS Holistic") brought this action against Defendants Purple Haze of Seminole, LLC d/b/a Purple Haze Tobacco & Accessories ("Purple Haze") and Evelio Calzadilla (collectively, "Defendants") alleging claims for: (1) federal trademark counterfeiting and infringement; and (2) false designation of origin and unfair competition (Doc. 1). GS Holistic filed this action in federal court alleging Purple Haze and Mr. Calzadilla engaged "in the unlawful manufacture, retail sale, and/or wholesale sales of counterfeit Stündenglass glass infusers" (Doc. 1, ¶ 6). After Purple Haze and Mr. Calzadilla failed to appear, GS Holistic moved for entry of default against both defendants (Doc. 17), which the Clerk of Court subsequently entered (Docs. 18, 19). GS Holistic now moves for entry of a default judgment against Purple Haze and Mr.

Calzadilla (Doc. 21). For the following reasons, it is recommended that GS Holistic's motion for default judgment (Doc. 21) be granted.

## I.    Background

GS Holistic is a Delaware limited liability company ("LLC") with a principal place of business in Los Angeles, California (Doc. 1, ¶ 5). Purple Haze is a Florida LLC with a principal place of business in Seminole, Florida (Doc. 1, ¶ 6). GS Holistic alleges that Mr. Calzadilla "owned, managed, and/or operated" Purple Haze (Doc. 1, ¶ 7).

GS Holistic alleges ownership of the following registered trademarks:

a.     U.S. Trademark Registration Number 6,633,884 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 011.

b.     U.S. Trademark Registration Number 6,174,292 for the design plus words mark "S" and its logo in association with goods further identified in the registration in international class 034.

c.     U.S. Trademark Registration Number 6,174,291 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 034.

(Doc. 1, ¶ 11) ("Stündenglass Marks"). The Stündenglass Marks are alleged to be exclusive to GS Holistic and appear clearly on its Stündenglass products, as well as on the packaging and advertisements related to the products (Doc. 1, ¶ 15). GS Holistic alleges that it has been marketing and selling Stündenglass products since 2020 and it has worked to "distinguish the Stündenglass brand as the premier manufacturer of glass infusers by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior smoking

experience" (Doc. 1, ¶¶ 8–9, 13). GS Holistic alleges the Stündenglass Marks are distinctive to both the consuming public and to industry professionals due to the superior materials used in its production and the "substantial time, money, and other resources" it has contributed to "developing, advertising, and otherwise promoting and protecting" the Stündenglass Marks (Doc. 1, ¶¶ 13, 15). GS Holistic points also to "extensive unsolicited publicity resulting from their high-quality and innovative designs" resulting in fame throughout the United States (Doc. 1, ¶¶ 16, 17). Because of this superiority, GS Holistic explains it has been required to scrupulously defend its trademarks against counterfeiters (*see* Doc. 1, ¶¶ 21–24). GS Holistics alleges it sells its products under the Stündenglass Marks to approximately 3,000 authorized stores in the United States, including in Florida, and that a Stündenglass brand glass infuser is priced at $599.95 (Doc. 1, ¶¶ 20–21).

GS Holistic alleges that without its consent Defendants "sold within the United States commerce, glass infusers bearing reproductions, counterfeits, copies and/or colorable imitations" of the Stündenglass Marks (Doc. 1, ¶¶ 25–27). GS Holisitc's investigator purchased a glass infuser with a Stündenglass Mark affixed to it from Purple Haze for $350.52 (Doc. 1, ¶¶ 29–30). When the investigator received the product, the investigator confirmed that the glass infuser was a counterfeit good with an infringing mark affixed to it (Doc. 1, ¶ 31). GS Holistic alleges that Mr. Calzadilla "authorized, directed, and/or participated" in Purple Haze's offer for sale of the counterfeit goods (Doc. 1, ¶ 32).

GS Holistic alleges Purple Haze used images and names identical to or confusingly similar to the Stündenglass Marks, to confuse customers and aid in the promotion and sales of the counterfeit goods (Doc. 1, ¶ 41). Moreover, GS Holistic alleges Defendants' acts "have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin" of the counterfeit goods and "are likely to deceive, and have deceived, the relevant consuming public into mistakenly believing" that the counterfeit goods "originate from, are associated or affiliated with, or otherwise authorized by GS" Holistic (Doc. 1, ¶42). These acts, GS Holistic alleges, are willful (Doc. 1, ¶ 43).

GS Holistic alleges Defendants' sale of the counterfeit goods has caused GS Holistic to suffer losses and has caused damage to the goodwill and reputation associated with the Stündenglass Marks (Doc. 1, ¶ 35). GS Holistic also alleges that it has been forced to obtain counsel to bring this action due to Defendants' actions (Doc. 1, ¶ 50). GS Holistic alleges Defendants' actions "will continue to cause damage and immediate irreparable harm to GS, the Stündenglass Marks, and to its valuable reputation and goodwill with the consuming public for which GS has no adequate remedy at law" unless enjoined by the Court (Doc. 1, ¶¶ 44, 51–52). Meanwhile, Defendants' have allegedly made and will continue to make substantial profits and gains to which they are not in law or equity entitled (Doc. 1, at 45).

In light of these allegations, GS Holistic filed a two-count complaint for federal trademark counterfeiting and infringement, 15 U.S.C. § 1114, and federal false designation of origin and unfair competition, 15 U.S.C. § 1125(a) (Doc. 1).

4

## II.    Legal Standard

"When a defendant has failed to plead or defend, a district court may enter judgment by default." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) (citing Fed. R. Civ. P. 55(b)(2)). Following entry of a default under Rule 55(a), a defendant is deemed to admit a plaintiff's well-pleaded allegations of fact, and, therefore, before entering a default judgment under Rule 55(b), a district court must ensure that the well-pleaded allegations in the complaint actually state a substantive cause of action and that a substantive, sufficient basis exists in the pleadings for the particular relief sought. *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (citation omitted).[1] If the allegations of the complaint, accepted as true, establish the defaulted defendants' liability, then the court should enter judgment against them. *See generally Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1288–89 (S.D. Fla. 2016). Although a defaulted defendant is deemed to admit the well-pleaded allegations of fact, the defaulted defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (citation and quotation omitted). Rather, entry of a default judgment is only warranted where a sufficient basis exists in the pleadings for the judgment entered. *Surtain*, 789 F.3d at 1245 (citation omitted).

---

[1] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority.  11th Cir. R. 36-2.

Courts assess pleadings in conjunction with a default judgment by a standard "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Id*. (citation omitted). Namely, a court may enter a default judgment only where a pleading contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In addition to the pleadings, the court may also consider evidence presented in support of the motion for default judgment, including testimony and affidavits. *Equal Emp't Opportunity Comm'n v. Titan Waste Servs. Inc.*, No. 3:10-cv-379-MCR-EMT, 2014 WL 931010, at *6 (N.D. Fla. Mar. 10, 2014); *cf. Super Stop No. 701, Inc. v. BP Prod. N. Am. Inc.*, No. 08-civ-61389, 2009 WL 5068532, at *2 n.4 (S.D. Fla. Dec. 17, 2009) (noting that "unchallenged affidavits are routinely used to establish liability and damages" for default judgment). At all times, the decision to enter a default judgment remains within the discretion of the district court. *Hamm v. Dekalb County*, 774 F.2d 1567, 1576 (11th Cir. 1985).

Notably, allegations regarding the amount of damages are not admitted by virtue of default. *Wallace v. The Kiwi Grp., Inc.*, 247 F.R.D. 679, 681 (M.D. Fla. 2008) (citation omitted). Rather, the plaintiff bears the burden to demonstrate the amount of damages it contends should be awarded, with the court determining the

amount and character of damages to be awarded. *Id.* Though the court may hold an evidentiary hearing to determine an appropriate amount of damages, it is not required to do so, especially where the essential evidence is of record. *See Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911-12 (11th Cir. 2011) (noting that, when considering when to enter or effectuate a default judgment, the court maintains discretion regarding whether to conduct an evidentiary hearing to determine the amount of damages); *see S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone ... We have held that no such hearing is required where all essential evidence is already of record."); *Wallace*, 247 F.R.D. at 681 ("If a default judgment is warranted, the Court may hold a hearing for purposes of assessing damages. … However, a hearing is not necessary if sufficient evidence is submitted to support the request for damages."); Fed. R. Civ. P. 55(b)(2). Indeed, a court "may award statutory damages 'without holding an evidentiary hearing based upon affidavits and other documentary evidence if the facts are not disputed.'" *Rocca v. CSX Cloud LLC*, No. 8:21-CV-2547-CEH-CPT, 2022 WL 4244800 (M.D. Fla. Sept. 15, 2022) (quoting *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007)). Notwithstanding, a court must assure that a legitimate basis exists for any damage award it enters. *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003).

### III.   Discussion

#### A.   Subject Matter and Personal Jurisdiction

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because GS Holistic's claim is brought pursuant to a federal statute. The Court also has personal jurisdiction over Defendants: Purple Haze is incorporated in and has its principal place of business in Florida and Mr. Calzadilla resides in Florida (Doc. 1, ¶ 3). *See* Fed. R. Civ. P. 4(k); Fla. Stat. § 48.193.

#### B.   Service of Process

In seeking a default judgment, Plaintiff bears the burden of establishing proper service of the complaint. *See Rajotte v. Fabco Metal Prod., LLC*, No. 6:12-cv-372-ORL-28, 2012 WL 6765731, at *2 (M.D. Fla. Dec. 13, 2012), *report and recommendation adopted,* No. 6:12-cv-372-ORL-28, 2013 WL 57722 (M.D. Fla. Jan. 4, 2013) (denying motion for default judgment without prejudice due to improper service). Even if a defaulting defendant has actual notice of the action, "[i]nsufficient or improper service cannot support the entry of a default judgment." *Opella v. Rullan*, No. 10-civ-21134, 2011 WL 2600707, at *4 (S.D. Fla. June 29, 2011), *report and recommendation adopted,* No. 10-civ-21134, 2011 WL 13220496 (S.D. Fla. Aug. 9, 2011) (citing *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007)); *see Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) ("In the absence of such service (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant.").

To serve Purple Haze, an LLC, GS Holistic must have complied with Fed. R. Civ. Pr. 4(h) which provides that an entity in a judicial district of the United States may be served in the manner prescribed by Rule 4(e)(1) for serving an individual. Fed. R. Civ. Pr. 4(h). Federal Rule of Civil Procedure 4(e)(1) provides that an individual may be served by a manner permitted under the laws of the state in which the federal district court is located for an action brought in a court of jurisdiction in that state or in the state wherein service is made. Fed. R. Civ. P. 4(e)(1). Florida law provides that service on limited liability companies may be achieved through service on a registered agent, Fla. Stat. § 48.062(2), and if that registered agent's listed address is a residence, the agent may be served according to Fla. Stat. § 48.031, which is the statute providing for service upon an individual. Fla. Stat. § 48.062(5)(a). An individual may be served by delivering a copy of the complaint, petition, or other initial pleading or paper to the person or by leaving the copies at his or her usual place of abode with any person residing therein who is fifteen years of age or older after informing the person of their contents. Fla. Stat. § 48.031(1)(a).

Here, Purple Haze, a limited liability company, listed Mr. Calzadilla as its registered agent and listed his residence as the agent's address (Doc. 9). GS Holistic served the summons on a co-resident of Mr. Calzadilla's address who was over the age of fifteen (Doc. 9). Thus, GS Holistic properly served Purple Haze. For the same reason, Mr. Calzadilla was also served properly pursuant to Fla. Stat. 48.031(1)(a) (Doc. 10).

Despite being served October 1, 2022, Defendants failed to respond or file an answer to the Complaint by October 22, 2022. As more than twenty-one days expired since service of the summons and Complaint, clerk's defaults were properly entered against Defendants.

### C.    Liability[2]

In Count I, GS Holistic avers that Defendants willfully infringed on GS Holistic's trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Doc. 1, ¶ 11). To prevail on a claim of trademark infringement in this case, GS Holistic must establish: (1) that GS Holistic possesses a valid mark, (2) that Defendants used the mark, (3) that Defendants' use of the mark occurred "in commerce," (4) that Defendants used the mark "in connection with the sale ... or advertising of any goods," and (5) that Defendants used the mark in a manner likely to confuse consumers. 15 U.S.C. § 1114(1)(a); *see N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008).

In Count II, GS Holistic alleges that Defendants' unauthorized use in commerce of the Stündenglass Marks also constituted the use of a false designation of origin as well as a misleading description and representation of fact in violation

---

[2] GS Holistic asserts only two counts in its complaint—Count I for willful trademark infringement and Count II for false designation of origin—but GS Holistic cites three categories of claims in its motion for default judgment: "(i) willful trademark infringement of the Stündenglass trademarks in violation of 15 U.S.C. §§ 1114; (ii) trademark counterfeiting of the Stündenglass trademarks in violation of 15 U.S.C. §§ 1116(d); and (iii) willful trademark infringement (false designation) in violation of 15 U.S.C. § 1125(a)." Because GS Holistic's complaint excludes a count under 15 U.S.C. § 1116(d) and Plaintiff's motion for default judgment excludes a request for injunctive relief, the undersigned will not analyze the case pursuant to 15 U.S.C. § 1116(d).

of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The Lanham Act imposes civil liability on

> [a]ny person who ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]

15 U.S.C. § 1125(a)(1)(B). The Eleventh Circuit has referred to 15 U.S.C. § 1125(a) as a "federal cause of action for unfair competition." *Savannah Coll. of Art and Design, Inc. v. Sportwear, Inc.*, 872 F.3d 1256, 1261 (11th Cir. 2017).

While section 32(a) of the Lanham Act, codified at 15 U.S.C. § 1114(1)(a), guards against "infringement" and section 43(a), codified at 15 U.S.C. § 1125(a), protects against "false designation of origin," the Eleventh Circuit has recognized that "an unfair competition claim based only upon alleged trademark infringement is practically identical to an infringement claim." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1026 n.14 (11th Cir. 1989*); see Savannah Coll. of Art & Design, Inc.*, 872 F.3d at 1261 ("We, like other circuits, often blur the lines between § 1114 claims and § 1125 claims because recovery under both generally turns on the confusion analysis"); *Tana v. Dantanna's,* 611 F.3d 767, 773 n.5 (11th Cir. 2010) (stating that the district court's error in analyzing a trademark case under § 1114 rather than § 1125 was irrelevant "because the district court based its grant of summary judgment on the likelihood-of-confusion prong"). Thus, to obtain default judgment on both of the statutory claims at issue here, GS Holistic must establish

11

the following two elements: 1) valid ownership of the mark; and 2) Defendant's use of the mark in commerce creates a likelihood of confusion among consumers as to the origin of the goods. *See Alliance Metals, Inc. of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 906 (11th Cir.2000); *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007) (describing the requirements for a § 1125 claim) (citation omitted); *Dieter v. B & H Indus. of Southwest Florida, Inc.*, 880 F.2d 322, 326 (11th Cir. 1989) (same for a § 1114 claim). As already noted, Defendants have defaulted so all well-pleaded facts are deemed admitted. *See generally Chanel, Inc.*, 240 F. Supp. at 1288–89.

First, GS Holistic has shown that it possesses a valid mark. Namely, GS Holistic alleges it owns the Stündenglass Marks, three valid marks with registration numbers of 6,633,884, 6,174,292, and 6,174,291 (Doc. 1, ¶ 11). While GS Holistic has not provided the certificates of registration for the Stündenglass Marks, it has specifically listed the marks' registration numbers and alleged its ownership of them. Thus, the undersigned finds GS Holistic has shown that it possesses a valid mark.

Second, GS Holistic has shown that Defendants made unauthorized use of the Stündenglass Marks in commerce such that consumers were likely to confuse the two. The Eleventh Circuit has considered the following seven factors in assessing whether or not a likelihood of consumer confusion exists: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets (trade channels) and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion. *Planetary*

*Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1201 n.22 (11th Cir. 2001). Where the defendants have sold counterfeit products and/or packaging intended to look exactly like genuine products and packaging, likelihood of consumer confusion is presumed. *See Casa Dimitri Corp. v. Invicta Watch Co. of Am.*, 270 F. Supp. 3d 1340, 1359 (S.D. Fla. 2017) (noting that courts generally engage in a seven-factor assessment of whether a likelihood of confusion exists but indicating that application of the factors is unnecessary where use of an identical mark, *i.e.* a counterfeit mark, is at issue); *Dive N' Surf, Inc. v. Anselowitz*, 834 F. Supp. 379, 382 (M.D. Fla. 1993) ("[B]ecause the counterfeit symbols and the genuine symbols are substantially similar as to both design and use and because defendant sold the counterfeit symbols to the public, the court presumes that defendant's counterfeit items caused public confusion in the marketplace."). In its complaint, GS Holistic alleges that Defendants sold "glass infusers bearing reproductions, counterfeits, copies and/or colorable imitations" of the Stündenglass Marks (Doc. 1, ¶ 25–27). As part of GS Holistic's investigation into the sales of counterfeit products bearing the Stündenglass Marks, GS Holisitc's investigator purchased from Purple Haze a glass infuser with a Stündenglass Mark affixed to it (Doc. 1, ¶¶ 29–30). When the investigator received the product, the investigator confirmed that the glass infuser was a counterfeit good with an infringing mark affixed to it (Doc. 1, ¶ 31). Specifically, the counterfeit good had marks on it that were identical to, or substantially indistinguishable from, the Stündenglass Marks (Doc. 1, ¶ 28). GS Holistic alleges the marks were identical or confusingly similar to in such a way that

13

it would confuse customers and allow Defendants to "trade on the goodwill of the Stündenglass Marks" (Doc. 21, at 7). Moreover, Christopher Folkerts, the Chief Executive Officer of GS Holistic, signed an affidavit which stated the products were "the same product" but of a lesser quality (Doc. 21-1, ¶¶ 11, 16). Thus, the undersigned finds that GS Holistic has shown that Purple Haze made unauthorized use of the Stündenglass Marks such that consumers were likely to confuse the two because the goods were counterfeits and utilized identical or substantially similar marks.

Finally, individual owners or officers are personally liable for a company's trademark infringement if they direct, control, ratify, participate in, or are the moving force behind the infringing activity. *ADT LLC. v. Alarm Prot. Tech Fla., LLC*, 646 F. App'x 781, 787-88 (11th Cir. 2016) (citing *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994)) (quotation omitted). GS Holistic alleges that Mr. Calzadilla "authorized, directed, and/or participated" in Purple Haze's offer for sale of the counterfeit goods (Doc. 1, ¶ 32). Thus, the undersigned finds Mr. Calzadilla liable for Purple Haze's trademark infringement.

Accordingly, the undersigned finds that GS Holistic has established the liability of Defendants Purple Haze and Mr. Calzadilla for trademark infringement pursuant to 15 U.S.C. § 1114 (Count I) and for false designation of origin pursuant to 15 U.S.C. § 1125(a) (Count II).

### D.   Damages

GS Holistic seeks an award of statutory damages for Defendants' willful conduct and an award of GS Holistic's costs.[3] On the facts presented, it is appropriate for the Court to grant the relief requested in this motion, namely: (1) statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c) in the amount of $150,000 ($50,000 per mark); and (2) costs in the amount of $977.52.

Once a plaintiff has established a sufficient basis for liability, the court must determine the appropriate damages. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004). Fed. R. Civ. P. 55(b)(2) allows the court to conduct a hearing on damages, however an evidentiary hearing is not needed when the record adequately supports the request for damages. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone. We have held that no such hearing is required where all essential evidence is already of record.") (citation omitted); *see also PetMed Express*, 336 F. Supp. 2d at 1217 (holding that when the plaintiff sought statutory damages and attached detailed declarations and documentary evidence to the plaintiff's default motion, a hearing was unnecessary to determine damages). The court may award statutory damages "without holding an evidentiary hearing based upon affidavits

---

[3] GS Holistic requested injunctive relief in its Complaint but has not requested such relief in its motion for default judgment, instead focusing on statutory damages (*see* Doc. 21). Accordingly, the undersigned recommends not awarding injunctive relief.

and other documentary evidence if the facts are not disputed." *Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *1 (S.D. Fla. Oct. 18, 2007).

As provided for by 15 U.S.C. § 1117(c), GS Holistic has elected to pursue an award of statutory damages plus costs in lieu of actual damages (Doc. 21, at 8). The Lanham Act provides that a plaintiff in a counterfeit case may elect to receive statutory damages in an amount "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" or "if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). As applicable here, the term "counterfeit mark" means "a spurious designation that is identical with, or substantially indistinguishable from" a trademark. 15 U.S.C. § 1116(d).

The Lanham Act "does not provide guidelines for courts to use in determining an appropriate award." *Nike, Inc. v. Austin*, No. 6:09-cv-796; *Louis Vuitton Malletier & Oakley, Inc. v. Veit,* 211 F.Supp.2d 567, 583 (E.D.Pa.2002); *Tiffany (NJ) Inc. v. Luban,* 282 F.Supp.2d 123, 124–25 (S.D.N.Y.2003) ("The statute 'does not provide guidelines for courts to use in determining an appropriate award' and is only limited by what 'the court considers just.'") (internal citation omitted); *see also PetMed Express, Inc.,* 336 F.Supp.2d at 1217 (citing *Tiffany* and other cases for the same proposition); *Punch Clock, Inc. v. Smart Software Dev.,* 553 F.Supp.2d 1353, 1357 (S.D.Fla.2008) (same). Many courts look to the Copyright Act's analogous

provision, 17 U.S.C. § 504(c), in this situation. *See, e.g., Tiffany,* 282 F.Supp.2d at 125; *Louis Vuitton,* 211 F.Supp.2d at 583; *Sara Lee Corp. v. Bags of N.Y., Inc.,* 36 F.Supp.2d 161, 166 (S.D.N.Y.1999). Under the Copyright Act, courts consider factors such as: (1) "the expenses saved and the profits reaped;" (2) "the revenues lost by the plaintiff;" (3) "the value of the copyright;" (4) "the deterrent effect on others besides the defendant;" (5) "whether the defendant's conduct was innocent or willful;" (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;" and (7) "the potential for discouraging the defendant." *Tiffany,* 282 F.Supp.2d at 125 (quoting *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.,* 807 F.2d 1110, 1117 (2d Cir.1986)). At any rate, courts have said that statutory damages awards should serve the dual purpose of compensating the plaintiff and deterring infringers. *See PetMed Express, Inc.,* 336 F. Supp. 2d at 1220–21 ("Statutory damages under § 1117(c) are intended not just for compensation for losses, but also to deter wrongful conduct."). Notably, the "statutory damages provision was added in 1995 because 'counterfeiters' records are frequently nonexistent, inadequate, or deceptively kept ...." *Tiffany,* 282 F.Supp.2d at 124 (quoting S.Rep. No. 104–177, at 10 (1995)). In cases alleging willful infringement, the defendants' willfulness is established by virtue of their default. *See Chanel, Inc.,* 240 F. Supp. 3d at 1292; *Perry Ellis,* 2007 WL 3047143, at *7 ("PEI's allegation that URI intentionally, knowingly, and willfully infringed upon PEI's trademarks has been established by the default."); *Arista Recs., Inc. v. Beker Enters., Inc.,* 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (collecting cases).

GS Holistic requests $50,000 in statutory damages per mark, or $150,000, plus costs of $977.52 (Doc. 21, at 10). GS Holistic's costs consist of the filing fee ($402.00), the process server fee ($160.00), and its investigation fees ($415.52) (Doc. 21, at 10; Doc. 21-3, ¶ 6). While GS Holistic has not submitted evidence concerning the expenses saved and profits reaped by Defendants, it has submitted some evidence regarding revenues lost. Mr. Folkerts, the Chief Executive Officer of GS Holistic, signed an affidavit which showed that Stündenglass products' total sales in the United States were $1.7 million in 2020 and $9.6 million in 2021 (Doc. 21-2, at 2). While unable to state the true impact of the counterfeits sold by Defendants, Mr. Folkerts noted that GS Holistic's research has shown that within the marketplace, at least three of every ten products bearing a Stündenglass mark is a counterfeit (Doc. 21-2, at 2). Mr. Folkerts acknowledged that the true amount of damages is "nearly impossible to determine" because Defendants have not appeared in the case but that $50,000 per mark for a total of $150,000 would be a deterrent for continued willful infringement on GS Holistic's trademarks (Dos. 21-1, ¶ ¶ 15–21).

Considering the goals of the statutory damages award—compensation and deterrence—as well as the persuasive factors taken from the Copyright Act, the undersigned recommends awarding GS Holistic its requested damages and costs. The undersigned agrees that because Defendants have failed to respond to GS Holistic's complaint or the motion for default judgment, an actual damages calculation "is extremely difficult if not impossible." *Nike, Inc. v. Austin,* No. 6:09-

CV-796-ORL28KRS, 2009 WL 3535500 at *5 (M.D. Fla. Oct. 28, 2009). GS Holistic has put forth what evidence it could muster to demonstrate the depth of the impact of counterfeit sales; while not specifically limited to Defendants' sales, GS Holistic has shown a large general impact on the company. Moreover, GS Holistic provided the undersigned with the information on damages reasonably attainable due to Defendants' defaults and it demonstrates that GS Holistic suffers from significant counterfeit problems. The pervasiveness of counterfeits in the market necessitates damages awards to deter this wrongful conduct. Additionally, the identical nature of the counterfeits combined with the default shows Defendants engaged in the infringing conduct willfully. While GS Holistic does not request damages above $200,000 which would have required a finding of willfulness, nonetheless, the willful nature of the infringement is relevant to damages. Finally, genuine Stündenglass products sell for $599.95, suggesting the value of the trademark is high.

GS Holistic also requests the Court award costs in addition to statutory damages. GS Holistic provided an accounting of its costs to defend its trademarks: the filing fee ($402.00), the process server fee ($160.00), and Plaintiff's investigation fees ($415.52) (Doc. 21, at 10; Doc. 21-3, ¶ 6). Pursuant to 15 U.S.C.A. § 1117(a), GS Holistic is entitled to the costs of this action.

Thus, considering the foregoing, the undersigned recommends awarding statutory damages of $50,000 per mark and costs of $977.52, or $150,977.52 in total.

## IV.    Conclusion

For the foregoing reasons, it is hereby

RECOMMENDED:

1.    GS Holistic's Motion for Default Judgment (Doc. 21) be GRANTED.

2.    Judgment be entered in favor of GS Holistic and against Defendants on its claims for relief in the Complaint in the amount of $150,000 in damages and $977.52 in costs, with interest accruing at the current per annum legal rate, for which sum let execution issue.

4.    The Court retain jurisdiction to enforce the Default Judgment.

5.    The Clerk be directed to close this case and terminate any remaining deadlines.

IT IS SO REPORTED in Tampa, Florida, this 8th day of May, 2023.

_____

ANTHONY E. PORCELLI
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections.  28 U.S.C. § 636(b)(1)(C).  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  See 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).  **Should the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.**

cc:    Hon. Virginia M. Hernandez Covington
      Counsel of Record